# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:17-CV-00190-GCM

| | |
|---|---|
| SPENCER KREBS ) <br> MORGAN SWITZER ) <br> DAVE WYATT ) <br> KRYSTAL HORSLEY ) <br> JACENTA MARIE PRICE ) <br> MARKISHA DOBSON, ) <br> on behalf of themselves and all others ) <br> similarly situated**,** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> **v.** ) <br> ) <br> CHARLOTTE SCHOOL OF LAW, LLC ) <br> INFILAW CORPORATION ) <br> INFILAW HOLDING, LLC ) <br> STERLING CAPITAL PARTNERS, L.P. ) <br> STERLING CAPITAL GMBH & CO. KG ) <br> JAY CONISON ) <br> CHIDI OGENE ) <br> DON LIVELY ) <br> BETSY DEVOS**,** ) <br> ) <br> ) <br> **Defendants.** ) <br> ) | **ORDER** |

**THIS MATTER** is before the Court upon Defendants Sterling Capital Partners, L.P. and Sterling Capital Partners, GMBH & CO. KG's (collectively "Sterling Entities") Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 63.) Plaintiffs have filed a response and Sterling Entities have filed a reply. Accordingly, this matter is ripe for disposition.

I.    **Background**

Plaintiffs are current or former students at Charlotte School of Law ("CSL"). On behalf of themselves and a putative class, they assert a number of claims stemming from issues concerning CSL's accreditation status with the American Bar Association ("ABA"), including allegations that the Defendants made misrepresentations to them, breached contracts with and fiduciary duties to them, and engaged in unfair and deceptive trade practices, all to entice Plaintiffs to enroll at, or to continue to attend, CSL.

Sterling Entities are affiliated with a private equity firm that is based in Illinois, with its headquarters in Chicago. That private equity firm holds investments in InfiLaw Holding. InfiLaw Holding holds an ownership interest in InfiLaw Corporation. InfiLaw Corporation owns shares in CSL. To say it another way: Sterling Entities are two corporate levels removed from CSL.

II.   **Standard of Review**

In order to survive a motion to dismiss under Rule 12(b)(6), Plaintiffs' Complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the United States Supreme Court has held, the "short and plain statement of the claim," as set forth in Rule 8(a)(2), "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint is only plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court need not accept as true a plaintiff's "unwarranted

inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

A federal court may exercise personal jurisdiction over a foreign defendant only if the state in which the court sits could exercise personal jurisdiction. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Plaintiffs must therefore show that North Carolina's exercise of personal jurisdiction over the Sterling Entities would comport with both: (1) North Carolina's long-arm statute, N.C.G.S. 1-75.4, and (2) constitutional due process. *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). Because North Carolina's long-arm statute is co-extensive with the limits of due process, the "dual jurisdictional requirements collapse into a single inquiry," and only the due process inquiry need be addressed. *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

The due process inquiry focuses on whether the defendant has "minimum contacts" with North Carolina such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945)). Under the due process inquiry, there are two paths for a district court to assert jurisdiction over an out-of-state defendant: general and specific jurisdiction. *Universal Leather*, 773 F.3d at 559. General jurisdiction requires a "showing of continuous and systematic activities in the forum state," whereas specific jurisdiction applies where "defendant's qualifying contacts with the forum state also constitute the basis for the suit." *Id.*

Lastly, when determining if a court has personal jurisdiction over defendants in a case, plaintiff bears the burden of proof. *See Carefirst*, 334 F.3d at 396 ("When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge,

with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence."). But, when "adjudicating [a 12(b)(2)] motion, the court construes all disputed facts and draws all reasonable inferences from the proof in favor of jurisdiction." *Manley v. Air Canada*, 753 F. Supp. 2d 551, 556 (E.D.N.C. 2010) (citing *Carefirst*, 334 F.3d at 396). "However, where the court does not conduct an evidentiary hearing and relies instead only on the pleadings and affidavits alone, plaintiff need only make a prima facie showing of jurisdiction." *Id.* (citing *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997)). And "[m]ere allegations of in personam jurisdiction are sufficient for a party to make [such] a prima facie showing." *Barclays Leasing, Inc. v. National Business Systems, Inc.*, 750 F. Supp. 184, 186 (W.D.N.C. 1990).

### III. Discussion

#### A. Defendants' 12(b)(2) Motion

Imputing general personal jurisdiction over a corporation can be done in a number of ways. The most common way is for the forum state to be the corporation's "place of incorporation [or] principal place of business." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 (2014). In addition, a court can exercise general personal jurisdiction over a corporate defendant if the corporation has "continuous and systematic" contacts so as to render it "essentially at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

It is undisputed that Sterling Entities are not incorporated in North Carolina and their principal places of business are also not in North Carolina, so the inquiry turns to whether Sterling Entities have "continuous and systematic" contacts with North Carolina. Plaintiffs have alleged no facts, other than a conclusory allegation, that would allow the Court to find the necessary "continuous and systematic" contacts required for general personal jurisdiction. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919. Indeed, Plaintiffs seem to recognize this shortcoming as

4

they fail to address general jurisdiction in their response brief, relying solely on specific jurisdiction. Accordingly, the Court concludes that it cannot exercise general personal jurisdiction over Sterling Entities.

To assert specific personal jurisdiction over a corporation in accordance with the Fourteenth Amendment's Due Process Clause, the corporation must have sufficient "minimum contacts" with the forum state such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash*, 326 U.S. 310, 316 (1945) (internal citations omitted). The Fourth Circuit has further clarified this test to be composed of three factors: (1) whether the plaintiff's claims arise out of or relate to the defendant's contacts with the forum; (2) "the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state;" and (3) "whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397.

Turning to the first factor above, Plaintiffs make a feeble attempt in their opposition brief to tie the Sterling Defendants to their claims by vaguely citing "their conduct related to the long-term financing and strategic goals of InfiLaw and the for-profit law school that it owned and operated in Charlotte, North Carolina. (Doc. No. 68, p. 10). Plaintiffs then, in a roundabout way, point to an allegation in the Complaint that Sterling Entities were present at Charlotte School of Law after the Department of Education's lack of recertification occurred as proof of sufficient connections. *See* Second Am. Comp. ¶ 17. These allegations are conclusory and do not establish that Sterling Entities had any sort of control of CSL beyond long-term financing, which is insufficient to satisfy the first prong. Accordingly, the first element of the *Carefirst* test fails.

Assuming, *arguendo*, that the first factor is satisfied, the inquiry turns to the second prong of the *Carefirst* test. The Court finds that it likewise fails. The Fourth Circuit has provided a number of examples of situations where the second prong would succeed:

> [T]hese factors include, but are not limited to:
> - Whether the defendant owns property in the forum state;
> - Whether the defendant reached into the forum state to solicit or initiate business;
> - Whether the defendant deliberately engaged in significant or long term business activities in the forum state . . . .

*Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). Defendants have submitted the Declaration of Sterling Entities' General Counsel, M. Avi Epstein, which states that Sterling Entities do not directly own property in North Carolina, they have not solicited or initiated any direct business in North Carolina, and they have not deliberately engaged in significant or long term direct business activities. (*See* Doc. No. 64 Ex. 1 ¶ 13) ("[Sterling Entities] do not advertise in North Carolina; do not hold any equity in any companies incorporated or headquartered in North Carolina; have no contracts with vendors based in North Carolina; are not contractually obligated to perform any duties in North Carolina; have no property, offices, bank accounts, or employees in North Carolina; and, to my knowledge, have not had any employee make a business trip to North Carolina."). Plaintiffs provide nothing to counter the statements in Epstein's Declaration. Accordingly, the Court finds that there is no specific personal jurisdiction over Sterling Entities.

### B. Defendants 12(b)(6) Motion

Although unnecessary given the Court's decision on Defendants' 12(b)(2) Motion, the Court will briefly address Defendants' 12(b)(6) Motion. Under North Carolina law, "[a] corporate parent cannot be held liable for the acts of its subsidiary unless the corporate structure is a sham and the subsidiary is nothing but a 'mere instrumentality' of the parent." *Broussard v. Meineke*

*Disc. Muffler Shops, Inc.*, 155 F.3d 331, 349 (4th Cir. 1998). Finding that a subsidiary is a mere instrumentality requires showing that,

> [T]he parent exercises control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own.

*Id.* (internal quotation marks omitted); *See also Synovus Bank v. Coleman*, 887 F. Supp. 2d 659, 676 (W.D.N.C. 2012) (finding "mere ownership" is not enough to "render a parent corporation liable for the acts of its subsidiary"). To adequately plead the necessary elements of "control of the corporation so that it has no independent identity," Plaintiffs must prove, "[e]xcessive fragmentation of a single enterprise into separate corporations," "[i]nadequate capitalization," or "[n]on-compliance with corporate formalities." *Glenn v. Wagner*, 329 S.E.2d 326, 330–32 (N.C. 1985).

Defendants argue, and the Court agrees, that Plaintiffs' claims against Sterling Entities lack any factual basis, and instead rely upon entirely conclusory assertions. For example, Plaintiffs allege that the Sterling Entities "controlled the other corporate defendants" and that InfiLaw is "owned and *operated*" by the Sterling Entities. Compl. at ¶ 38–39, 61 (emphasis added).

The allegations are merely a "threadbare recital[] of the elements of a cause of action" and are not enough to survive a motion to dismiss. *Id.*; *Iqbal*, 556 U.S. at 678. Plaintiffs, in their response, do not provide any argument to the contrary or even address this argument at all. Accordingly, Sterling Entities' 12(b)(6) motion will be granted because Plaintiffs' allegations fall far short of a factual basis sufficient to pierce the corporate veil and impute the alleged acts of Sterling Entities' subsidiaries to Sterling Entities.

**IT IS THEREFORE ORDERED** that Sterling Entities' Motion to Dismiss is hereby **GRANTED**.

Signed: July 27, 2017

Graham C. Mullen
United States District Judge